**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KATIE A., by & through her next
friend Michael Ludin; MARY B.,
by & through her next friend
Robert Jacobs; JANET C., by &
through her next friend Dolores
Johnson; HENRY D., by & through
his next friend Gillian Brown;
GARY E., by & through his next
friend Michael Ludin, individually
& on behalf of others similarly
situated,
　　　　　　*Plaintiffs-Appellees,*

　　　　　　v.

LOS ANGELES COUNTY; LOS
ANGELES COUNTY DEPARTMENT OF
CHILDREN AND FAMILY SERVICES;
DOES, I thru 100 inclusive; DAVID
SANDERS,
　　　　　　*Defendants,*

　　　　　　and

DIANA BONTÁ, Director of CA
Dept of Health Services; RITA
SAENZ, Director of CA Dept of
Social Services,
　　　　　　*Defendants-Appellants.*

No. 06-55559

D.C. No.
CV 02-05662 AHM

OPINION

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
October 24, 2006—Pasadena, California

3387

Filed March 23, 2007

Before: Eugene E. Siler, Jr.,* A. Wallace Tashima, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Tashima

---

*The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge
for the Sixth Circuit, sitting by designation.

**COUNSEL**

Sandra L. Goldsmith, Deputy Attorney General, Los Angeles, California, for the defendants-appellants.

Robert D. Newman, Esq., Western Center for Law and Poverty, Los Angeles, California, for the plaintiffs-appellees.

## OPINION

TASHIMA, Circuit Judge:

Defendants, the Director of the California Department of Health Services ("DHS") and the Director of the California Department of Social Services ("DSS"), appeal from the district court's grant of a preliminary injunction ordering them to screen members of a statewide class of foster children[1] and, where medically necessary, provide the children with the forms of mental health care known as wraparound services and therapeutic foster care. The district court found that "the early and periodic screening, diagnostic, and treatment services" ("EPSDT") provisions of the Medicaid Act obligate the State of California ("State") to provide wraparound services and therapeutic foster care to Medicaid-eligible children under 21, and that the State does not currently provide those forms of assistance, "as such."

On appeal, defendants argue that the district court abused its discretion in granting a preliminary injunction against them and in denying their motion for reconsideration. Specifically, they contend that the court: (1) failed to make findings of fact and conclusions of law, as required by Federal Rule of Civil Procedure 52(a); (2) committed clear error in its factual findings; (3) applied the wrong legal standard both as to the standard for issuance of a mandatory preliminary injunction against a state agency and as to the underlying legal questions; and (4) failed to comply with Federal Rule of Civil Procedure 65(d)'s requirement that an injunction be specific in its terms. We have jurisdiction to review the district court's order

---

[1]The class also includes children at imminent risk of foster care placement.

granting the preliminary injunction and the court's denial of the motion for reconsideration under 28 U.S.C. § 1292(a)(1).

Because the district court applied an erroneous interpretation of the Medicaid Act, we reverse and remand. We reject defendants' remaining contentions of error regarding the factual findings and legal standard relied on by the district court.

## BACKGROUND

### I.  The *Katie A.* Class Action

In July 2002, a class of children who were in Los Angeles County foster care or at risk of being placed into foster care (Katie A., et al.) filed a complaint seeking declaratory and injunctive relief against the Director of DHS and the Director of DSS,[2] as well as Los Angeles County, the Los Angeles County Department of Children and Family Services ("DCFS"), and the Director of DCFS ("LA County Defendants"). The complaint alleged that the class was entitled to and had not received "medically necessary mental health services in a home-like setting." Separate claims were alleged under 42 U.S.C. § 1983, based on violations of the children's rights under the Medicaid Act, 42 U.S.C. § 1396 *et seq.*, and the Due Process Clause of the federal Constitution; under the Americans with Disabilities Act and the Rehabilitation Act; under the Due Process Clause of the California Constitution; and under California statutory law.

The complaint was later amended to include a state-wide class of children in foster care or at risk of being placed in foster care. The district court certified the class under Federal Rule of Civil Procedure 23(b)(2),[3] and approved a settlement

_____

[2]DHS is the State agency responsible for administering Medicaid health services in California. California's Medicaid program is called "MediCal." DSS is the State agency responsible for supervising the administration of child welfare services in California.

[3]The class was defined as:

Children in California who (a) are in foster care or at imminent

agreement between the plaintiff class and LA County Defendants.

Plaintiffs then moved for a preliminary injunction to require the Director of DHS and the Director of DSS ("defendants") to provide wraparound services ("wraparound") and therapeutic foster care ("TFC") to members of the class. Plaintiffs described wraparound and TFC as highly effective "integrated community-based interventions for children with emotional, behavioral, and mental health disorders." Plaintiffs argued that the EPSDT provisions obligate the State to provide wraparound and TFC to them. In particular, they alleged that MediCal policies impeding access to wraparound services or TFC violated the Medicaid statute. They alleged that MediCal covered only some components of wraparound and TFC, and that State policies made it difficult to access either type of care.

Defendants argued that the Medicaid statute does not require them to provide services in the wraparound or TFC forms demanded by plaintiffs,[4] and that MediCal provides all required services. They characterized wraparound and TFC as processes or approaches, rather than services, and argued that

---

risk of foster care placement; and (b) have a mental illness or condition that has been documented or, had an assessment already been conducted, would have been documented; and (c) who need individualized mental health services, including but not limited to professionally acceptable assessments, behavioral support and case management services, family support, crisis support, therapeutic foster care and other necessary services in the home or in a home-like setting, to treat or ameliorate their illness or condition.

[4]Both plaintiffs and defendants, as well as the district court, have used the phrase "as such" to modify the phrase "wraparound and TFC" throughout the case, as a shorthand way of expressing the idea of "wraparound and TFC as distinct programs" or as "separately covered packages of services under Medi-Cal." As discussed below, this modifier was crucial to the district court's understanding and analysis of the case.

the Medicaid Act does not create obligations to provide either. Defendants also disputed plaintiffs' contention that all of the components of wraparound and TFC are health care services properly covered by Medicaid.

On March 14, 2006, the district court entered an order granting a mandatory preliminary injunction against defendants, ordering them to provide medically necessary wraparound services[5] and TFC[6] to class members on a consistent, statewide basis within 120 days of the order's entry. Stating that defendants did not dispute that they did not provide wraparound and TFC as such, the court found that "wraparound services and therapeutic foster care fall within the EPSDT obligations of Medicaid-participating states."[7] The court also

---

[5]The court relied on plaintiffs' description of wraparound services, which was as follows:

> Providers of wraparound care services: (a) engage in a unique assessment and treatment planning process that is characterized by the formation of a child, family, and multi-agency team, (b) marshal community and natural supports through intensive case management, and (c) make available an array of therapeutic interventions, which may include behavioral support services, crisis planning and intervention, parent coaching and education, mobile therapy, and medication monitoring.

[6]The court also incorporated plaintiffs' description of TFC as programs that:

> (a) place a child singly, or at most in pairs, with a foster parent who is carefully selected, trained, and supervised and matched with the child's needs; (b) create, through a team approach, an individualized treatment plan that builds on the child's strengths; (c) empower the therapeutic foster parent to act as a central agent in implementing the child's treatment plan; (d) provide intensive oversight of the child's treatment, often through daily contact with the foster parent; (e) make available an array of therapeutic interventions to the child, the child's family, and the foster family . . . ; and (f) enable the child to successfully transition from therapeutic foster care to placement with the child's family or alternative family placement by continuing to provide therapeutic interventions.

[7]As a preliminary matter, the court held that plaintiffs properly relied on the private right of action contained in 42 U.S.C. § 1983 to enforce the

cited what it described as plaintiffs' undisputed evidence that wraparound and TFC are medically necessary for children with serious mental health needs. On this basis, the court concluded that plaintiffs had shown a strong likelihood of succeeding on the merits of their Medicaid Act claim. The court also described the potential for irreparable harm to plaintiffs in the form of unnecessary institutionalization and unmet mental health needs, if the injunction were not issued.

The court denied defendants' motions for clarification and reconsideration, but subsequently issued an Addendum to the order, which contained short answers to defendants' questions from their motion for clarification. The Addendum also contained appendices ("Appendices A and B") listing the components of wraparound and TFC for purposes of compliance with the order.

## II. The Medicaid Framework and the EPSDT Obligation

Medicaid is a cooperative federal-state program that directs federal funding to states to assist them in providing medical assistance to low-income individuals. 42 U.S.C. § 1396. States choose whether to participate in Medicaid. Once a state enters the program, the state must comply with the Medicaid Act and its implementing regulations. *Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985); *see generally* 42 U.S.C. § 1396 *et seq.* California has chosen to participate in Medicaid.

To participate in Medicaid, a state must submit and have approved by the Secretary of Health and Human Resources a state plan for medical assistance. 42 U.S.C. § 1396. The Medicaid Act requires that each state plan "provide for making medical assistance available, including at least the care and

right to EPSDT services created by 42 U.S.C. § 1396a(a)(10), citing *Watson v. Weeks*, 436 F.3d 1152 (9th Cir.), *cert. denied*, 127 S.Ct. 598 (2006). Defendants have not disputed that ruling on appeal.

services listed in paragraphs (1) through (5), (17) and (21) of section 1396d(a) of this title, to all individuals [listed under certain statutory provisions]." 42 U.S.C. § 1396a(a)(10). "[E]arly and periodic screening, diagnostic, and treatment services . . . for individuals who are eligible under the plan and are under the age of 21" are among the mandatory categories of medical assistance. 42 U.S.C. § 1396d(a)(4)(B).[8]

Thus, California, like all other states participating in Medicaid, is required to provide EPSDT care to eligible children under the age of 21.[9] EPSDT services are defined in § 1396d(r). The EPSDT services at issue in this case, wraparound and TFC, are claimed to fall under subsection (r)(5) as "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in subsection (a) of this section to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan." 42 U.S.C. § 1396d(r)(5).

Under § 1396d(r)(5), states must "cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under § 1396d(a)." *S.D. ex rel. Dixon v. Hood*, 391 F.3d 581, 590 (5th Cir. 2004) (citing *Collins v. Hamilton*, 349 F.3d 371 (7th Cir. 2003)); *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 293 F.3d 472 (8th Cir. 2002); *Pittman v. Sec'y, Fla. Dep't of Health & Rehab.*, 998 F.2d 887 (11th Cir. 1993); *Pereira v. Kozlowski*, 996 F.2d 723 (4th Cir. 1993)).[10] Although states have the

---

[8]All subsequent references to statutory sections are to sections of Title 42 of the United States Code, unless otherwise noted.

[9]A large subset of the plaintiffs are eligible for Medicaid as foster children receiving federal assistance under Title IV-E of the Social Security Act, and others may be eligible on other grounds. *See* 42 U.S.C. § 1396a(a)(10)(A)(i)(I). The district court's order covers only MediCal eligible children.

[10]This is subject to certain limits; for example, a state need not pay for experimental medical procedures. *See Miller v. Whitburn*, 10 F.3d 1315, 1318 (7th Cir. 1993); *McLaughlin v. Williams*, 801 F. Supp. 633, 637-38 (S.D. Fla. 1992).

option of not providing certain "optional" services listed in § 1396d(a) to other populations, they must provide all of the services listed in § 1396d(a) to eligible children when such services are found to be medically necessary. Section 1396d(a) contains a list of 28 categories of care or services; these categories are fairly general, including descriptions such as "inpatient hospital services" and "private duty nursing services." 42 U.S.C. § 1396d(a)(1)-(8).

The EPSDT obligation is thus extremely broad. The federal agency charged with administering the Medicaid Act, the Centers for Medicare and Medicaid Services ("CMS"), has described EPSDT as a "comprehensive child health program of prevention and treatment." CMS, U.S. Dep't of Health & Human Servs., Pub. No. 45, *State Medicaid Manual* § 5010(B) (hereinafter "*State Medicaid Manual*").[11]

## STANDARD OF REVIEW

We review the district court's grant or denial of a preliminary injunction for abuse of discretion. *Earth Island Inst. v. U.S. Forest Serv.*, 442 F.3d 1147, 1156 (9th Cir. 2006). "The district court necessarily abuses its discretion when it bases its decision on an erroneous legal standard or on clearly erroneous findings of fact." *Rodde v. Bont*, 357 F.3d 988, 994 (9th Cir. 2004) (citations and internal quotation marks omitted); *see also Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319 (9th Cir. 1994) ("An order [granting a preliminary injunction] is reversible for legal error if the court did not apply the correct preliminary injunction standard, or if the court misapprehended the law with respect to the underlying issues in litiga-

---

[11]Courts have accorded CMS' interpretations of the Medicaid Act, such as that found in the *State Medicaid Manual*, "respectful consideration" based on the agency's expertise, the statute's complexity and technical nature, and the broad authority delegated to the Secretary of Health and Human Services under the Act. *S.D. ex rel. Dixon*, 391 F.3d at 590 n.6; *see also Wis. Dep't of Health & Family Servs. v. Blumer*, 534 U.S. 473, 497 (2002).

tion.") (citation and internal quotation marks omitted).[12] Where an injunction is issued against state officials, a district court will "be deemed to have committed an abuse of discretion . . . if its injunction requires any more of state officers than demanded by federal constitutional or statutory law." *Clark v. Coye*, 60 F.3d 600, 604 (9th Cir. 1995) (citation omitted).

## DISCUSSION

### I.   The District Court's Factual Findings

Defendants argue that the district court clearly erred in a number of its findings of fact. We review a district court's factual findings for clear error, and this court will not reverse "if the district court's findings are plausible in light of the record viewed in its entirety . . . even if it is convinced it would have found differently." *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002), *aff'd*, 540 U.S. 644 (2004).

First, defendants argue that the court erred in stating that "Defendants do not dispute that currently they are not providing these forms of assistance [wraparound and TFC], as such, to members of the plaintiff class." However, defendants immediately follow this contention with this statement: " 'Wraparound services' and 'therapeutic foster care' are not

---

[12]Citing *Thomas v. County of Los Angeles*, 978 F.2d 504 (9th Cir. 1992), defendants argue that a heightened standard of appellate review applies to preliminary injunctions against state agencies. *Thomas*, however, employed "more rigorous" review only in the sense that the court checked to see whether the district court properly applied the rule that requires a showing of "an intentional and pervasive pattern of misconduct" by officials before a federal court may enjoin a state or local law enforcement agency. *See id.* at 508 (citing *Rizzo v. Goode*, 423 U.S. 362, 375 (1976)). Therefore, *Thomas* does not alter the general standard of appellate review for preliminary injunctions against state or local agencies. *Cf. Rodde*, 357 F.3d at 994-95 (applying normal standard of appellate review to a preliminary injunction issued against the County of Los Angeles under the Americans with Disabilities Act).

Medicaid-covered services as such and *are therefore not covered as such under the Medi-Cal program.*" (Emphasis added.) This statement coincides almost exactly with the district court's description of defendants' position. It is therefore difficult to see how defendants can argue that the court's finding was clearly erroneous, while essentially reiterating that finding as their position in their next sentence.[13]

Defendants also argue that the court overlooked or mischaracterized several of their legal arguments (whether they disputed plaintiffs' categorization of which statutory provisions encompass the components of wraparound and TFC, and the nature of their contentions regarding the coverage of § 1396d(a)). The district court's characterizations of the parties' legal arguments, however, are not factual findings; because we do not rely on or defer to them, we need not review them for clear error.[14]

Defendants further argue that the court erred in finding that other states fund wraparound and TFC programs under Medicaid. The district court cited those states' practices as support for its conclusion that wraparound and TFC are Medicaid-covered services. Evidence in the record supports the court's

---

[13]Defendants attempt to qualify their agreement with the district court's finding by asserting that any component of wraparound or TFC that is covered under Medicaid is already covered under MediCal. The district court did not make any factual findings on this issue, however, because the court found that the Medicaid Act requires the State to provide wraparound and TFC "as such." The State could apparently not meet this obligation by funding only individual components of those types of care. Therefore, given the court's legal conclusion, there was no reason for the court to make findings regarding the State's provision of the components.

[14]Defendants' contention that the court committed clear error in characterizing wraparound services and TFC as "services" is similarly misplaced, because that was not a pure factual finding, but an application of a statutory term. The court's finding was specifically directed to the question of whether those types of care are "early and periodic screening, diagnostic, and treatment services" falling under § 1396d(r)(5) — which must be resolved as a matter of statutory interpretation. *See* Part III.B, *infra*.

findings, and defendants have not presented any strong evidence to the contrary. For example, evidence that some states' programs use blended funding is not inconsistent with the fact that such programs use Medicaid funding. Nor did defendants point to any specific evidence that other states are only able to fund wraparound and TFC through waivers allowing them to offer services not otherwise covered by Medicaid.

## II.    The Mandatory Preliminary Injunction

[1] Defendants contend that the district court failed to apply the appropriate legal standard for issuance of a mandatory preliminary injunction. We disagree. First, the district court correctly described the applicable test for the granting of a preliminary injunction, *see Rodde*, 357 F.3d at 994 (describing test), as well as the heightened standard that applies to mandatory injunctive relief, *see Stanley*, 13 F.3d at 1320 (stating that, when issuing a mandatory preliminary injunction, the court must find that the "facts and law clearly favor" plaintiffs).

[2] Second, in concluding that plaintiffs were entitled to a mandatory preliminary injunction, the district court correctly applied these tests. The court found that plaintiffs had a strong likelihood of success on the merits of their Medicaid Act claims. It also discussed the possibility that plaintiffs would face unnecessary institutionalization without the preliminary injunction, recognized that such harms were "grave," and rejected defendants' arguments that plaintiffs failed to show that they faced irreparable harm. It is evident that the court concluded that plaintiffs faced the potential for irreparable injury without the injunction. This is sufficient to meet the general requirement of "probable success on the merits and the possibility of irreparable injury" for preliminary injunctive relief. *Rodde*, 357 F.3d at 994. The court's finding of a strong likelihood that plaintiffs would succeed on the merits of their claims also evidences a conclusion that the law and facts clearly favor plaintiffs, meeting the requirement for issuance

of a mandatory preliminary injunction. *Stanley*, 13 F.3d at 1320.

Defendants also argue that the district court did not make any explicit findings showing that it considered the federalism principles that require federal courts to grant each state "the widest latitude in the dispatch of its own internal affairs" and to find "a threat of immediate and irreparable harm" before enjoining a state agency's operations. *See Rizzo*, 423 U.S. at 378-79; *Gomez v. Vernon*, 255 F.3d 1118, 1128 (9th Cir. 2001); *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999). The district court, however, did describe plaintiffs' vulnerability, complex needs, and ongoing "unmet mental health needs and the harms of unnecessary institutionalization." That description suffices to show that the court found a threat of immediate and irreparable harm to plaintiffs. As for the deference accorded to state agencies in their internal affairs, the court appropriately allowed defendants an opportunity jointly to develop the remedial plan needed to implement the injunction. No further deference was required; the order itself required only that defendants supply the services that the court found to be required under federal law. It did not mandate detailed or burdensome procedures for compliance. *See Clark*, 60 F.3d at 604.

## III.   The Medicaid Act

The district court's determination that the EPSDT provisions of the Medicaid Act require the State to provide wraparound and TFC was the foundation for its ruling that plaintiffs have a strong likelihood of success on the merits. Whether the district court correctly interpreted the EPSDT provisions of the Medicaid Act is a question of statutory interpretation that we review de novo. *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 730 (9th Cir. 1999).

Defendants contend that the district court erred in determining that the EPSDT provisions of the Medicaid Act require

the State to provide wraparound and TFC. They argue that, even assuming all the components are covered under § 1396d(a), federal law does not require the State to offer the components as a "bundle" of services. They also dispute the court's conclusion that all the component services included within wraparound and TFC fall under § 1396d(a).

We conclude that the district court applied an erroneous legal standard in concluding that the EPSDT provisions require the State to provide wraparound and TFC. The district court mistakenly assumed that if all the components of wraparound and TFC fall within categories listed in § 1396d(a), and that wraparound and TFC can be deemed health care "services" in themselves, then the package of components must be offered in the form of wraparound or TFC. This assumption was flawed, for reasons that we explain below.

In general, the EPSDT provisions require only that the individual services listed in § 1396d(a) be provided, without specifying that they be provided in any particular form.[15]

## A.  *The district court's approach*

The district court first determined that wraparound and TFC are mental health "services," rather than simply processes, approaches, or philosophies. The court then noted that a service may fall under one of the 28 categories of § 1396d(a) without being expressly listed as one of those categories. Relying on plaintiffs' breakdown of wraparound and TFC into component services, and their listing of specific provisions of § 1396d(a) which would cover each component, the

---

[15]It is possible that if the State fails adequately to provide the component services, and the effectiveness of those services requires their coordinated delivery, it may be appropriate to require the State to provide services packaged together in a particular form, such as wraparound or TFC. Because, however, the predicate is unmet in this case, we need not address that possibility.

court concluded that each component likely falls under one or more of the § 1396d(a) categories listed by plaintiffs. For example, the court found that one component of wraparound, "engagement of the child and family," likely falls under § 1396d(a)(19) as "case management." After stating that all the components of both wraparound and TFC would fall under the State's EPSDT obligations, the court concluded that, as a result, wraparound and TFC are themselves within the State's EPSDT obligations.

The court did not explore the possibility that the State might only have an obligation to fund the component services of wraparound and TFC, rather than to offer the coordinated complex of services in a single package. This is clear from the way that the court addressed whether the State was violating its EPSDT obligations — which is to say that the court did not address the question beyond stating that defendants did not dispute that they were not providing wraparound and TFC "as such" to members of the plaintiff class.

But defendants had stated in their opposition to plaintiffs' motion for a preliminary injunction that "Medi-Cal already covers the services that Plaintiffs are entitled to under Medicaid" and that plaintiffs were seeking a "bundled rate."[16] There was also evidence in the record that MediCal currently reimburses providers for at least some components of wraparound and TFC. Therefore, the court should have examined whether all required component services under § 1396d(a) were already being supplied. If all mandated services under § 1396d(a) are being supplied effectively, the State is not obliged to go further and package the services as wraparound and TFC.

---

[16]It should be noted that defendants also disputed whether the components of wraparound and TFC were actually covered under the Medicaid statute.

### B.  *The EPSDT provisions require that a specified set of health services be provided in an effective manner to eligible children*

**[3]** As stated above, under the EPSDT provisions, states have an obligation to cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under § 1396d(a). The states also have an obligation to see that the services are provided when screening reveals that they are medically necessary for a child. This obligation is created by § 1396a(a)(43)(C), which states that a state plan must provide for arranging, directly or through referral, necessary corrective treatment under the EPSDT obligation. *See* § 1396a(a)(43)(C); *Clark v. Richman*, 339 F. Supp. 2d 631, 646-67 (M.D. Pa. 2004) ("[state's] obligations with respect to EPSDT services require more proactive steps, such as actual provision of services"); *Chisholm v. Hood*, 110 F. Supp. 2d 499, 507 (E.D. La. 2000) ("states are further obligated to actively arrange for corrective treatment" under § 1396a(a)(43)(C)); *Salazar v. Dist. of Columbia*, 954 F. Supp. 278, 330 (D.D.C. 1996) (finding that District of Columbia's failure to ensure that EPSDT-eligible children receive diagnosis and treatment for health problems detected during screening violated § 1396a(a)(43)(C)); *State Medicaid Manual* § 5310 (states must "[d]esign and employ methods to assure that children receive . . . treatment for all conditions identified as a result of examination or diagnosis"). Even if a state delegates the responsibility to provide treatment to other entities such as local agencies or managed care organizations, the ultimate responsibility to ensure treatment remains with the state. *See, e.g.*, *John B. v. Menke*, 176 F. Supp. 2d 786, 801 (M.D. Tenn. 2001) (state cannot "disclaim responsibility for the ultimate provision of EPSDT-compliant services by a once-removed provider").

**[4]** States also must ensure that the EPSDT services provided are reasonably effective. Thus, the *State Medicaid Manual* states at several points that EPSDT services must be

sufficient "to achieve their purpose." *See State Medicaid Manual* § 5110 ("Services provided under EPSDT must be sufficient in amount, duration, or scope to reasonably achieve their purpose."); *id.* § 5123 (while "42 C.F.R. 440.230 allows [states] to establish the amount, duration and scope of services provided under the EPSDT benefit . . . services must be sufficient to achieve their purpose (within the context of serving the needs of individuals under age 21)"). Other statutory provisions and regulations under the Medicaid Act reinforce this obligation. *See, e.g.*, 42 U.S.C. § 1396a(a)(8) (stating that all medical assistance, including EPSDT, must be furnished with "reasonable promptness"); 42 C.F.R. § 441.61(b) (providing that state must make available a variety of qualified providers willing to provide EPSDT).

**[5]** Federal courts have scrutinized state Medicaid systems to be sure that those systems are adequately designed to provide EPSDT services. *See, e.g.*, *Chisholm v. Hood* ("*Chisholm II*"), 133 F. Supp. 2d 894, 899-901 (E.D. La. 2001) (stating that in not allowing psychologists directly to enroll as Medicaid providers and not providing alternative avenues of care, system foreclosed access to necessary psychological services for EPSDT-eligible children); *John B.*, 176 F. Supp. 2d at 791-92, 800-05 (finding that the structure of the Tennessee Medicaid managed care system "makes it impossible to fully comply with federal mandates" including EPSDT).

## C. As long as a State provides all EPSDT services in an effective manner, the Medicaid statute does not dictate that services must be "bundled"

**[6]** While the states must live up to their obligations to provide all EPSDT services, the statute and regulations afford them discretion as to how to do so. There is nothing in the EPSDT statutory provisions or regulations that indicates that the state must generally design its Medicaid system to fund "packages" of EPSDT services.[17] The legislative history of the

---

[17]Section 1396d(r)(5) obligates the states to provide "necessary health care, diagnostic services, treatment, and other measures" and references

EPSDT provisions simply indicates a Congressional purpose to provide a broad program of health care to poor children, one that would include all the forms of care listed in § 1396d(a).[18]

In a number of cases, courts have held that particular types of health services must be provided to Medicaid-eligible children under a state's EPSDT obligations. Those cases, however, did not require a state to fund distinct services covered under separate categories of § 1396d(a) as a single package of services. *See S.D. ex rel. Dixon*, 391 F.3d at 597 (incontinence underwear falls under § 1396d(a)(7) as "home health care services"); *Collins*, 349 F.3d at 374-76 (long-term care at psychiatric residential treatment facility falls under § 1396d(a)(16)

---

§ 1396d(a)'s description of 28 general categories of health care services. The EPSDT regulations do not state whether services must be provided in a single package, or can be covered as separate services. There are regulations providing further definition of specific categories within § 1396d(a). 42 C.F.R. §§ 440.1-440.185. CMS has never promulgated final regulations interpreting § 1396d(r)(5) since it was added by Congress in 1989. *See* Medicaid Program; Early and Periodic Screening, Diagnosis, and Treatment Services Defined, 58 Fed. Reg. 51,288 (proposed Oct. 1, 1993) (proposed regulations).

[18]Congress established the EPSDT program in 1967. *See Stanton v. Bond*, 504 F.2d 1246, 1247 (7th Cir. 1974) (describing establishment of program). Until 1989, states had substantial discretion regarding the services that they would provide as part of the EPSDT benefit. In 1989, Congress revised the EPSDT provisions to mandate broad coverage of medically necessary health services for eligible children under 21. *See* Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, § 6403 (codified in part and as amended at 42 U.S.C. § 1396d(r)); H.R. Rep. No. 101-386, at 453 (1989) (Conf. Rep.), *reprinted in* 1989 U.S.C.C.A.N. 3018, 3056. *See also* 135 Cong. Rec. S13,233-34 (Oct. 12, 1989) (Sen. Fin. Comm. Report) (explaining, as background to EPSDT amendments, that "while states have always had the option to do so, many still do not provide to children participating in EPSDT all care and services allowable under federal law, even if otherwise not included in the state's plan. . . . The Committee amendment would require that states provide to children all treatment items and services that are allowed under federal law and that are determined to be necessary. . . .").

as "inpatient psychiatric hospital services"); *Pediatric Specialty Care, Inc.*, 293 F.3d at 480-81 (early intervention day treatment services fall under § 1396d(a)(13) as "other diagnostic, screening, preventive, and rehabilitative services"); *Chisholm II*, 133 F. Supp. 2d at 897-98 (behavioral and psychological services for the autistic fall under both § 1396d(a)(6) as "any other type of remedial care recognized under State law" and § 1396d(a)(13) as "other preventive, and rehabilitative services").

The issue of whether the state must provide "bundled" EPSDT services was raised in a recent case quite similar to this one in Massachusetts, in which a class of children with serious emotional disturbances claimed a right under the EPSDT provisions to "intensive home-based services," which would have included components falling under various categories of § 1396d(a). The district court avoided ruling on the question of whether EPSDT required the state to provide "intensive home-based services" to the children. Instead it "looked behind the phrase to the array of actual clinical interventions that constitute, in the terms of the Medicaid statute, 'medically necessary' services for class members." *Rosie D. v. Romney*, 410 F. Supp. 2d 18, 30 (D. Mass. 2006).[19] On that basis, the court concluded that comprehensive assessment of the children's clinical needs, ongoing case management and monitoring, and adequate in-home behavioral support services were each required EPSDT services which the state had failed to provide. *Id.* at 52-53. We believe that that analytic approach was correct, insofar as it required the State to supply the substantive EPSDT services described in § 1396d(a) without curtailing the state's administrative discretion as to how to do so.

---

[19]The court noted that the phrase "intensive home-based services" had "generated an unhelpful, time-consuming, and largely irrelevant dispute over whether the phrase describes a discrete clinical intervention (i.e., an actual form of treatment) or merely one method or system for delivering medical treatment." 410 F. Supp. 2d at 30.

**[7]** The conclusion that as a general rule, states may fund or provide medically necessary EPSDT services as separate components is consistent with the overall structure and principles of the Medicaid program. Medicaid is a *cooperative* federal-state program. *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 502 (1990). While the states must meet the substantive obligations of the Medicaid Act, they nonetheless retain the discretion to design and administer their Medicaid systems as they wish. *Frew v. Hawkins*, 540 U.S. 431, 439 (2004) (noting that consent decree at issue represented one choice among "various ways that a State could implement the Medicaid Act" to comply with the "general EPSDT statute"); *John B.*, 176 F. Supp. 2d at 800 ("The State has discretion with respect to the provision of [EPSDT] services, so long as the plan 'complies satisfactorily' with federal law.") (citing *Chisholm I*); *Chisholm I*, 110 F. Supp. 2d at 506 ("Exactly how and in what fashion the state provides [EPSDT] services is left up to the state, as long as the state's plan to provide EPSDT services 'complies satisfactorily' with the requirements of federal law.") (citing *Mitchell v. Johnston*, 701 F.2d 337, 343 (5th Cir.1983)); *see also Blumer*, 534 U.S. at 495 (stating "that the leeway for state choices urged by both Wisconsin and the United States is characteristic of Medicaid"); *Alaska Dep't of Health & Soc. Servs. v. Ctrs. for Medicare & Medicaid Servs.*, 424 F.3d 931, 935 (9th Cir. 2005) ("Assuming that its plan meets federal requirements, a state has considerable discretion in administering its Medicaid program.").

## IV.  The Approach on Remand

Here, the district court assumed that if each component of a given type of care falls within the State's EPSDT obligations, this necessarily implies that that form of care itself must be funded and provided by the State as a single package.[20]

---

[20]Plaintiffs themselves did not make this assumption; their motion for a preliminary injunction cited examples of states that provide wraparound and TFC by funding the individual components (while asserting that it is "highly preferable" for providers to bill wraparound and TFC as "a bundled package of services").

Under that assumption, because MediCal does not fund wrap-around or TFC as distinct types of care, the district court concluded that the State was violating this obligation.

[8] In analyzing the issue in this way, the court conflated a two-step analysis into one; as a result, it applied a legal interpretation of the Medicaid Act that is too sweeping. The court should have first determined whether the State is meeting its legal obligation under the EPSDT provisions to provide all individual health services that fall under the categories listed in § 1396d(a). Then, if it found that the State is failing to provide the individual health services effectively, the court should have determined whether the failure could only be remedied by ordering the State to fund the individual services as a single "bundle." Rather than applying a legal rule that requires the State always to fund a coordinated bundle of services if the individual components fall under § 1396d(a), the court should have applied a legal rule that would allow the State to exercise its discretion as to how to meet its EPSDT obligation effectively to provide all the component services that fall under § 1396d(a). On remand, the district court should analyze plaintiffs' likelihood of success on their Medicaid Act claims in this manner.

## V.   Other Claims of Error

[9] We reject defendants' remaining contentions of error.[21] First, defendants contend that the injunction against DSS is "absolutely baseless." We conclude that the district court did

---

[21]Defendants also contend that they were "extremely prejudiced" by several of the district court's rulings that preceded the preliminary injunction, and by plaintiffs' alleged failure to comply with a discovery order. Because defendants provide no elaboration or legal argument regarding the court's supposed errors or the nature of any prejudice to them, we treat these contentions as having been waived. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (holding that court will consider "only issues which are argued specifically and distinctly in a party's opening brief").

not err in enjoining DSS, even though DSS does not administer the State MediCal program and the complaint did not specify DSS as a defendant to the Medicaid Act claims. Under the Federal Rules of Civil Procedure, every injunction "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed. R. Civ. P. 65(d). DSS had actual notice of both the motion for the preliminary injunction and of the order. Further, DSS supervises the State child welfare system that is charged with foster children's care and can influence whether they will receive needed mental health services or not — qualifying them as "persons in active concert" with the DHS with regard to the class members' receipt of health care through MediCal.[22]

**[10]** Defendants also contend that the district court erroneously required that they provide services to class members, rather than simply make such services available. The order required the State to screen class members and provide wraparound and TFC to members where medically necessary. Requiring the State actually to provide EPSDT services that have been found to be medically necessary is consistent with the language of the Medicaid Act, which requires that each state plan "provide for . . . arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services. . . ." 42 U.S.C. § 1396a(a)(43).

Finally, in their reply brief, defendants argue that plaintiffs'

---

[22]That DSS has the power to affect foster care children's receipt of mental health services is demonstrated by its administration of both the State's non-MediCal wraparound services pilot project ("SB 163" project), which uses State and county foster care funds to provide wraparound, and a federal child welfare demonstration project providing wraparound services ("Title IV-E Waiver" project).

first amended complaint fails to cite the actual provision of the Medicaid Act which creates the EPSDT entitlement enforceable under § 1983. Defendants did not make this argument in their opening brief. An appellate court "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *Koerner v. Grigas*, 328 F.3d 1039, 1048 (9th Cir. 2003) (citation omitted); *see also Indep. Towers of Wash.*, 350 F.3d at 929. Exceptions apply when (1) there is good cause for the omission or manifest injustice may result if the issue is not considered; (2) the issue was raised in appellee's brief; or (3) the omission did not prejudice the opposing party's defense. *Koerner*, 328 F.3d at 1048-49. None of those exceptions applies here.

In any event, it is clear that defendants had fair notice of the nature of plaintiffs' claims. *See Conley v. Gibson*, 355 U.S. 41, 47 (1957) (defendant must have fair notice of the nature of plaintiff's claim); *see also Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1391 (9th Cir. 1995) ("The pleadings need not identify any particular legal theory under which recovery is sought.").

Because we vacate the preliminary injunction, we need not address defendants' contentions that the form of the order violated Federal Rules of Civil Procedure 52(a) and 65(d). We do note that on remand, in order to comply with Rule 52(a) and to facilitate appellate review, the district court should first make separate determinations as to (1) whether each component service of wraparound and TFC falls under a particular provision of § 1396d(a), and (2) whether defendants have effectively provided each mandated component service, before applying the standard discussed above to determine whether the State should be required to provide the required services in another manner which will render such services effective, or proceed directly to wraparound and TFC. *See* Fed. R. Civ. P. 52(a).

**CONCLUSION**

The district court abused its discretion by relying on an erroneous legal interpretation of the federal Medicaid statute in granting plaintiffs' motion for a preliminary injunction. The preliminary injunction is reversed and the case is remanded for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**