**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1596

Z.W., a minor, by and through his parent and guardian, David Warner; DAVID WARNER,

Plaintiffs - Appellants,

v.

HORRY COUNTY SCHOOL DISTRICT,

Defendant - Appellee,

and

DOES 1-10.

Defendant.

Appeal from the United States District Court for the District of South Carolina, at Florence. Joseph Dawson, III, District Judge. (4:20-cv-00931-JD)

Argued: March 8, 2023                          Decided: May 26, 2023

Before WYNN, HARRIS, and HEYTENS, Circuit Judges.

Reversed and remanded by published opinion. Judge Heytens wrote the opinion, in which Judge Wynn and Judge Harris joined.

**ARGUED**: Mary Skahan Willis, ETHRIDGE LAW GROUP, LLC, Mount Pleasant, South Carolina, for Appellants. Kevin Alan Hall, WOMBLE BOND DICKINSON (US) LLP, Columbia, South Carolina, for Appellee. **ON BRIEF**: R. Michael Ethridge, ETHRIDGE LAW GROUP, LLC, Mount Pleasant, South Carolina, for Appellants. M. Todd Carroll, Bryant S. Caldwell, WOMBLE BOND DICKINSON (US) LLP, Columbia, South Carolina, for Appellee.

———————

TOBY HEYTENS, Circuit Judge:

This case asks whether a student with disabilities had to exhaust state administrative remedies before filing a disability discrimination suit against a school district. Concluding the answer is "no," we reverse the district court's dismissal of the student's complaint and remand for further proceedings.

I.

The Individuals with Disabilities Education Act (IDEA) and its implementing regulations promise students with disabilities a "free appropriate public education" tailored to their individual needs. 20 U.S.C. § 1400(d). The IDEA also grants various procedural protections to parents, including "the right to bring a civil action" to address violations of the statute. § 1415(i)(2)(A). Before suing, however, a parent generally must exhaust state administrative remedies. See *MM v. School Dist. of Greenville Cnty.*, 303 F.3d 523, 535–36 (4th Cir. 2002).

The IDEA is not the only federal statute that protects students with disabilities from unfair treatment. Title II of the Americans with Disabilities Act (ADA) forbids any "public entity" (including a school) from excluding, denying services to, or discriminating against any "qualified individual with a disability." 42 U.S.C. § 12132. The Rehabilitation Act imposes similar restrictions on "any program or activity receiving Federal financial assistance" (including schools). 29 U.S.C. § 794(a). Unlike the IDEA, neither the ADA nor the Rehabilitation Act requires plaintiffs to exhaust administrative remedies before suing non-federal entities. See 28 C.F.R. §§ 35.101(a), 35.172(d) (ADA); *Williams v. Milwaukee*

3

*Health Servs., Inc.*, 732 F.3d 770, 770–71 (7th Cir. 2013) (citing 29 U.S.C. § 794a(a)(2)) (Rehabilitation Act).

This case involves the interaction between these three statutes, specifically the question of when a plaintiff who is ostensibly suing under the ADA, the Rehabilitation Act, or both—but who does not invoke the IDEA—must nonetheless exhaust administrative remedies. Congress addressed that question in 20 U.S.C. § 1415(*l*), a provision designed to "overturn[]" a Supreme Court decision that broadly precluded ADA and Rehabilitation Act claims seeking to "challenge the adequacy of [a child's] education." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 160–61 (2017) (discussing *Smith v. Robinson*, 468 U.S. 992 (1984)).

Section 1415(*l*) "reaffirms the viability of federal statutes like the ADA or Rehabilitation Act as separate vehicles" for vindicating a child's rights, even in a school environment. *Fry*, 580 U.S. at 161 (brackets and quotation marks omitted). It does so by stating that "[n]othing in" the IDEA "shall be construed to restrict or limit the rights, procedures, and remedies available under" the ADA, the Rehabilitation Act, or other "Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415(*l*). For that reason, "the IDEA does not prevent a plaintiff from asserting claims under such laws even if . . . those claims allege the denial of an appropriate public education (much as an IDEA claim would)." *Fry*, 580 U.S. at 161.

At the same time, Section 1415(*l*) "imposes a limit on that 'anything goes' regime, in the form of an exhaustion provision." *Fry*, 580 U.S. at 161. Before a plaintiff may file "a civil action" under the ADA or the Rehabilitation Act "seeking relief that is also

4

available under" the IDEA, the plaintiff must "exhaust[]" the IDEA's administrative procedures "to the same extent as would be required had the action been brought under" the IDEA. 20 U.S.C. § 1415(*l*).

## II.

This case involves a student named Z.W. In 2017, when Z.W. was in elementary school, he was diagnosed with autism spectrum disorder, language disorder, and anxiety. A psychologist recommended Z.W. receive Applied Behavior Analysis (ABA) therapy—administered by a certified behavior therapist—in various settings including school, daycare, and around his community. Z.W. had private insurance that would pay for an ABA therapist to accompany Z.W. to school and treat him throughout the day.

Between 2017 and 2021, Z.W.'s parents asked defendant Horry County School District at least four times to allow Z.W. to be accompanied at school by an ABA therapist, at no cost to the school district. The school district denied the first three requests and did not respond to the fourth.

Following these rejections, Z.W.'s father filed a three-count complaint on Z.W.'s behalf in federal district court. Counts One and Two alleged the school district violated the ADA and the Rehabilitation Act by refusing to accommodate Z.W.'s request to have an ABA therapist accompany him at school. Count Three sought injunctive relief to remedy those alleged violations. The complaint did not mention the IDEA or allege the denial of a free appropriate public education. The district court dismissed Z.W.'s complaint "for failure to exhaust the administrative remedies under the IDEA." JA 139.

5

III.

We begin with a procedural tangle. Relying on this Court's non-precedential decision in *Z.G. ex rel. C.G. v. Pamlico County Public School Board of Education*, 744 Fed. Appx. 769 (4th Cir. 2018), the school district moved to dismiss solely under Federal Rule of Civil Procedure 12(b)(1) on the ground that Z.W.'s failure to exhaust administrative remedies deprived the district court of subject matter jurisdiction. Although Z.W.'s responsive filing insisted exhaustion was not required, it neither challenged the premise that exhaustion was a jurisdictional matter nor disputed that exhaustion could be adjudicated via a motion to dismiss. Again citing *Z.G.*, the district court concluded Z.W.'s failure to exhaust meant it "lack[ed] subject matter jurisdiction to adjudicate [Z.W.'s] claims." JA 138 n.3.

Now comes the problem. Well after the district court's decision—indeed, after the appeal had been fully briefed but before oral argument—this Court issued a published decision "hold[ing] the IDEA's exhaustion requirement is not a jurisdictional requirement but a claims-processing rule." *K.I. v. Durham Pub. Sch. Bd. of Educ.*, 54 F.4th 779, 792 (4th Cir. 2022).

When asked about *K.I.* at oral argument, neither side argued we should simply vacate and remand for further proceedings because the motion was brought under the wrong subsection of Rule 12(b) or because the district court erred in accepting the parties' premise that exhaustion is a jurisdictional requirement. Nor did Z.W. contend that—given *K.I.*—lack of exhaustion under the IDEA is an affirmative defense, which generally cannot be adjudicated via a motion to dismiss. Cf. *Mosely v. Board of Educ. of City of Chicag*o,

6

434 F.3d 527, 533 (7th Cir. 2006) (stating that "the earliest possible time to consider [IDEA exhaustion] would normally be after the answer has been filed"). The parties likewise have not pursued any of these matters since oral argument.

We need not untangle these procedural knots to resolve this appeal. Neither the consequences of bringing a motion under the wrong rule nor the juncture at which certain arguments may be presented are issues implicating the district court's subject matter jurisdiction or our own. Instead, such matters are governed solely by the Federal Rules of Civil Procedure and court-adopted rules of judicial administration. They are thus subject to ordinary rules of waiver and forfeiture. See *United States v. Buster*, 26 F.4th 627, 632 n.1 (4th Cir. 2022) ("[A]ny jurisdictional requirements found in federal rules exist by virtue of the Constitution and statutes, not the rules themselves." (formatting and quotation marks omitted)). And because the parties have not raised these issues, they are forfeited. See *Stokes v. Stirling*, 64 F.4th 131, 136 (4th Cir. 2023) (reaffirming a party may "forfeit[ ]" a non-jurisdictional argument "by not raising it on appeal"). We thus turn to the substance of the district court's ruling.

## IV.

The district court erred in concluding Z.W. needed to exhaust administrative remedies under the IDEA before bringing this suit.

The school district insists exhaustion was required because Z.W.'s complaint involves ABA therapy, and "ABA services can be available under the IDEA." Sch. Dist. Br. 7 (capitalization omitted). We agree ABA services can be part of the "individualized education program" (often called an IEP) to which qualifying students with disabilities are

7

entitled under the IDEA. See, *e.g.*, *Sumter Cnty. Sch. Dist. 17 v. Heffernan ex rel. TH*, 642 F.3d 478, 481 (4th Cir. 2011) (describing IEP that "called for 27.5 hours per week of ABA therapy"). But as the Supreme Court explained in *Fry*, that is not the relevant question. See 580 U.S. at 171–72 (noting a wheelchair-using student whose school lacks ramps might sue under either the ADA or the IDEA). Instead, the exhaustion inquiry "hinges on whether a lawsuit *seeks relief for* the denial of" the IDEA's "*sine qua non*": a free appropriate public education (often called, sadly, a FAPE). *Id.* at 167–68 (emphasis added).

In answering that question, the Supreme Court has told us to "look to the substance, or gravamen, of the plaintiff's complaint" to determine whether it "concerns the denial of a FAPE, or instead addresses disability-based discrimination." *Fry*, 580 U.S. at 165, 171. The Court also identified two "hypothetical questions" that provide a "clue" on which side of the line a given case falls. *Id.* at 171. "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library?" *Id.* "[S]econd, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.*

When, as here, the answer to both questions is "yes," it is "unlikely" a complaint "that does not expressly allege the denial of a FAPE is . . . truly about that subject." *Fry*, 580 U.S. 171. The "essence" (*id.* at 172) of Z.W.'s beef with the school district is its refusal to permit him to bring his privately supplied and funded ABA therapist to school with him. Z.W. could file essentially the same claim against a library, a museum, or a summer camp. What is more, a non-student visitor (say, a friend, sibling, or other relative) could make a

8

largely identical claim against the school district if it refused to permit an ABA therapist to accompany the visitor to Z.W.'s school.

The school district disagrees with our framing, insisting the "who pays for it" question is "not material" and that the correct inquiry is whether Z.W. could seek to make a public theater or library "provide" an ABA therapist. Oral Arg. 28:15–28:43. But once again, that argument departs from how the Supreme Court approached these issues in *Fry*. *Fry* involved parents who had "obtained a trained service dog" named Wonder to assist their child with "various life activities" and sought permission for the dog "to join [the child] in kindergarten." 580 U.S. at 162. The Supreme Court did not frame the issue as whether the student could have asked a library or public theater to supply a service dog or whether an adult visitor could have asked the school to do so. Instead, it noted "that the Frys could have filed essentially the same complaint if a public library or theater had *refused admittance to Wonder*" and "that an adult visitor to the school could have leveled much the same charges if prevented from entering with *his* service dog." *Id.* at 175 (emphasis added). So too here.

The school district's attempt to dismiss the "who pays" question also strays from the statutory text. When a plaintiff sues under the ADA and the Rehabilitation Act, exhaustion is required only if the plaintiff is "seeking relief that is also available under" the IDEA. 20 U.S.C. § 1415(*l*). But the only substantive right created by the IDEA is to a "*free* appropriate public education," § 1401(9) (emphasis added), and the only relief available during the IDEA's administrative process are measures designed to vindicate that right, see *Fry*, 580 U.S. at 166–68. Because Z.W.'s complaint requests nothing that would

9

be "provided at public expense . . . and without charge" to him and his parents, § 1401(9), its "essence" or "crux" does not appear to "concern[] the denial of a FAPE" in either "surface" or "substance," *Fry*, 580 U.S. at 169, 171, 172.

Finally, "the history of the[se] proceedings" does not suggest "the gravamen of [Z.W.'s] suit is the denial of a FAPE." *Fry*, 580 U.S. at 173. The school district has never suggested that Z.W. or his parents "previously invoked the IDEA's formal procedures to handle the dispute" about whether Z.W.'s privately financed ABA therapist could accompany him to school, "thus starting to exhaust the [IDEA's] remedies before switching midstream" as part of some sort of "strategic calculation[]." *Id.* Quite the contrary: The school district insists that accepting Z.W.'s position would allow him "to skip the IDEA's administrative process altogether." Sch. Dist. Br. 23; see Oral Arg. 33:40–34:50 (counsel for the school district asserting that Z.W. seeks to "bypass" or "sidestep" the IDEA's administrative process and "go straight to federal court"). Here, too, all signs indicate Z.W.'s complaint is not a disguised IDEA claim.

\*    \*    \*

We offer no opinion about whether Z.W. has valid claims under the ADA or the Rehabilitation Act or what defenses the school district may have to them. We hold only that the district court erred in dismissing the complaint because Z.W. failed to exhaust administrative remedies under the IDEA. The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*SO ORDERED*

10