**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

HAWAI'I DISABILITY RIGHTS
CENTER, in a representative capacity
on behalf of its constituents,

              *Plaintiff-Appellant*,

  v.

CHRISTINA KISHIMOTO, in her
official capacity as Superintendent of
the State of Hawaii, Department of
Education; PANKAJ BHANOT, in his
official capacity as Director of the
State of Hawaii, Department of
Human Services,

              *Defendants-Appellees*.

Nos. 20-17521,
22-16524

D.C. No.
1:18-cv-00465-
LEK-WRP

OPINION

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted October 4, 2023
University of Hawaii Manoa

Filed November 26, 2024

Before:  Marsha S. Berzon, Eric D. Miller, and Lawrence
VanDyke, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY*

**Exhaustion / Individuals with Disabilities Education Act**

The panel affirmed in part and reversed in part the district court's summary judgment in favor of the Hawai'i Departments of Education ("DOE") and Human Services ("DHS") in an action brought by the Hawai'i Disability Rights Center ("HDRC") alleging that DOE and DHS unlawfully denied students with autism access to certain therapeutic services.

The panel held that HRDC was required to exhaust administrative procedures available under the Individuals with Disabilities Education Act ("IDEA") on its IDEA claim, but HRDC's non-IDEA claims did not require exhaustion under the IDEA.

The panel held that, as Hawai'i's designated protection and advocacy system, HDRC can pursue administrative remedies under the IDEA to fulfill its statutory obligation to protect the rights of individuals with disabilities, and is therefore bound by the IDEA's administrative exhaustion requirement for its own claim, but need not ensure that

---

* This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

parents of individual children with autism exhaust their individual IDEA claims. HDRC did not exhaust its administrative remedies, and no exceptions to IDEA exhaustion applied.

The panel held that HDRC was not required to exhaust the IDEA's administrative procedures before bringing its claims under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Medicaid Act. The exhaustion requirement applies only if the relief sought under a non-IDEA statute is also available under the IDEA, which requires that children with disabilities be provided with a free appropriate public education ("FAPE"). Because HRDC's non-IDEA claims do not allege the denial of a FAPE, HRDC was not required to exhaust the IDEA's administrative procedures for its non-IDEA claims.

## COUNSEL

Maile Osika (argued), Paul D. Alston, Kristin L. Holland, Madisson L. Heinze, and Laura P. Moritz, Dentons US LLP, Honolulu, Hawaii, for Plaintiff-Appellant.

Skyler G. Cruz (argued), Caron M. Inagaki, and Ryan M. Akamine, Deputy Attorneys General; Anne E. Lopez, Attorney General of Hawaii; Office of the Hawaii Attorney General, Honolulu, Hawaii; for Defendants-Appellees.

Sarah Somers, National Health Law Program, Chapel Hill, North Carolina; David Hutt, National Disability Rights Network, Washington, D.C.; for Amici Curiae the National Health Law Program and the National Disability Rights Network.

Lisa M. Lawless and Kirsten A. Atanasoff, Husch Blackwell LLP, Milwaukee, Wisconsin; Daniel R. Unumb, Autism Legal Resource Center LLC, Lexington, South Carolina, for Amici Curiae National Autism Law Center, Autism Legal Resource Center, and Council of Autism Service Providers.

## OPINION

BERZON, Circuit Judge:

Autism Spectrum Disorder ("autism") refers to a range of cognitive and neurobiological disorders. Children with autism often suffer from delays or deficiencies in the development of cognitive functioning, language skills, social interaction, and motor coordination. The impairments and challenges faced by children with autism thus implicate both social and educational development. That duality lies at the heart of this case.

Hawai'i Disability Rights Center ("HDRC" or "the Center") is a federally authorized and funded protection and advocacy organization representing individuals in Hawaii with developmental disabilities, including children and young adults with autism. HDRC alleges that Hawaii's Departments of Education ("DOE") and Human Services ("DHS") unlawfully deny students with autism access to certain therapeutic services during the school day, even when those services are medically necessary. The disputed service is Applied Behavioral Analysis ("ABA"), a form of individualized behavioral therapy focused on reinforcing positive behavior in individuals with autism and other developmental disabilities. *See infra* Part I.A. DOE's and

DHS's policies, HDRC alleges, generally do not provide ABA services in-school to students with autism.  The state agencies, HDRC maintains, limit the provision of in-school therapeutic services for such students to only those services deemed educationally relevant by DOE and to only those students approved by DOE.  So, unless DOE independently determines a student requires ABA for educational purposes and provides DOE-approved personnel for that purpose, a student with autism who has been medically prescribed ABA services will not receive services during the school day.

HDRC seeks injunctive and declaratory relief, alleging that DOE's and DHS's policies limiting access to medically prescribed ABA services during the school day violate the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Medicaid Act, and the Individuals with Disabilities Education Act ("IDEA").  The district court granted summary judgment to DOE and DHS on all of HDRC's claims, holding that HDRC's failure to exhaust administrative procedures available under the IDEA was fatal to all of its claims.  The question before us on each claim is whether HDRC was required to exhaust.  We conclude that HDRC did not need to exhaust its American with Disabilities Act, Section 504, or Medicaid Act claims, but did for its IDEA claim.

## I.  BACKGROUND[1]

### A.  Autism and ABA Therapy

As described in expert declarations submitted by HDRC, Autism Spectrum Disorder ("autism") is a developmental

---

[1] Consistent with the standard for summary judgment, the facts recited here are viewed in the light most favorable to HDRC, the non-moving

disability that typically presents with "three core features": (1) challenges with "social reciprocity," (2) disordered communication, and (3) "restricted, repetitive" behaviors. Children with autism often "pursue[] unusual forms of stimulation and miss[] opportunities for social interaction to the point where they fail to develop normal language and social skills." "[D]evelopmental delays are not always apparent" in children with autism; some children might have "latent Autistic features that will manifest in severely harmful challenges later in life."

Evidence-based ABA programs typically provide 35–42 hours of intensive ABA treatment each week and take place across all settings of a child's life, including school. In Hawaii, ABA is widely provided to children under the age of 21, either through private medical insurance or, if the child is eligible for Medicaid, through DHS. *See* Haw. Rev. Stat. § 431:10A-133; 42 U.S.C. § 1396d(a)(4)(B), (r)(5). The parties agree that ABA therapy is one of the few effective, evidence-based treatments available for autism.[2] According to HDRC's expert pediatrician, Dr. Linda Copeland, if administered correctly at a young age, ABA can

---

party, and all reasonable inferences supported by the record are drawn in the Center's favor. *See, e.g.*, *McSherry v. City of Long Beach*, 584 F.3d 1129, 1134–35 (9th Cir. 2009).

[2] Amici curiae the National Autism Law Center, the Autism Legal Resource Center, and the Council of Autism Service Providers describe ABA therapy as a clearly defined medical treatment, "delivered by credentialed behavioral health professionals, following a rigorous ethics code, and in accordance with generally accepted standards of care." According to the National Autism Law Center, ABA therapy is "*the* standard of care for the treatment of [autism]." HDRC's expert psychologist, Dr. Eric V. Larsson, attested that "Intensive Intervention using ABA is the only extensively researched and validated form of treatment of Autism."

improve an individual's "language, social relationships, adaptive functioning, [decrease] maladaptive behaviors, and . . . increase[] [the] chance for successful educational inclusion." Dr. Copeland attested that early intervention can even, at times, "result[] in the loss of the Autism diagnosis." But, according to Dr. Copeland, if improperly administered, ABA can result in "medical harm in development that often cannot be undone." Dr. Larsson stated that it is critical that a child receiving ABA therapy work with a licensed behavior analyst. DOE and DHS do not agree that ABA must be provided by a licensed professional.

Pursuant to the IDEA, DOE determines the need for educationally necessary ABA services to be provided during the school day. DOE's policy is that these services "are to be provided by DOE and/or DOE contracted providers and may not be provided by a parent or parent's representative." DOE's policy effectively bans *medically* prescribed ABA services from taking place at school, unless they are also deemed educationally necessary, even if the services are available without cost to DOE. Also, DOE policy does not ensure that ABA or ABA-like services in school are provided by licensed providers.

## B. Statutory Context

### 1. Protection and Advocacy Systems

Congress passed the Developmentally Disabled Assistance and Bill of Rights Act of 1975 following public revelation of severe abuses of individuals with disabilities at Willowbrook State School in Staten Island, New York. Pub. L. 94-103, 89 Stat. 486. The 1975 Act and its successor statute, the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), require states that accept federal financial assistance for individuals with

developmental disabilities to have "in effect a system to protect and advocate the rights of individuals with developmental disabilities." 42 U.S.C. § 15043(a)(1); *see also* 45 C.F.R. §§ 1326.19–1326.24. These protection and advocacy systems have authority to "pursue legal, administrative, and other appropriate remedies . . . to ensure the protection of, and advocacy for, the rights of" individuals with disabilities who are eligible for state-supported services. 42 U.S.C. § 15043(a)(2)(A)(i). HDRC is Hawaii's designated protection and advocacy system. *See* Haw. Rev. Stat. § 333F-8.5.

### 2.  The Individuals with Disabilities Education Act

Pursuant to the Individuals with Disabilities Education Act ("IDEA"), DOE is required to provide children with disabilities "a free appropriate public education" ("FAPE"). 20 U.S.C. § 1401(9). A FAPE provides every child who qualifies with "special education" and "related services." *Id.*; *see also id.* § 1401(26), (29). An Individualized Education Program ("IEP") team meets to decide whether a child qualifies for services, and, if so, determine the appropriate services for the student. *See* 20 U.S.C. § 1414. The IEP team includes school staff, district administrators, and the parent or guardian of the child. *Id.* § 1414(d)(1)(B).

If an IEP team member disagrees with the IEP established for the child (or with the failure to establish one), the team member—in practice, typically the child's parent—must exhaust administrative remedies by filing an administrative complaint concerning, among other matters, any issue related to the provision of FAPE. 20 U.S.C.

§ 1415(b)(6)(A).[3]   "[T]he parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing," conducted by a hearing officer.  *Id.* § 1415(f)(1)(A), (f)(2).[4]  Following the hearing officer's decision, "any party involved in [the due process] hearing may appeal such decision," either to the state educational agency, when the initial hearing was conducted by a local educational agency, or by filing a lawsuit regarding their complaint.  *Id.* § 1415(i)(1)(A), (i)(2)(A).[5]    Only after obtaining a decision via the administrative hearing process does a party "have the right to bring a civil action with respect to the complaint."  *Id.* § 1415(i)(2)(A).  Should an individual file a lawsuit that does not explicitly allege a violation of the IDEA, but seeks relief that could be provided through the IDEA, that individual must exhaust administrative remedies before moving forward with the lawsuit.  *See id.* § 1415(l); *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 168–69 (2017).

### 3.  The Medicaid Act

Medicaid is a "cooperative federal-state program that directs federal funding to states to assist them in providing

---

[3] As discussed below, there are exceptions to IDEA's exhaustion requirement.  *See infra* Part II.A.2.

[4] The IDEA and DOE regulations require that due process hearings be heard by an impartial hearing officer not employed by a state agency that is "involved in the education or care" of the student.  20 U.S.C. § 1415(f)(3)(A)(i)(I); Haw. Admin. Rules § 8-60-65(c)(1)(A)(i).

[5] Hawaii has a state-wide school system administered by DOE, rather than local school boards or educational agencies.  In accordance with this structure, DOE regulations provide that "[a]ny party aggrieved by the findings and decision made" in a due process hearing "has the right to bring a civil action" without first filing an administrative appeal.  Haw. Admin. Rules § 8-60-70.

medical assistance to low-income individuals." *Katie A., ex rel. Ludin v. Los Angeles County*, 481 F.3d 1150, 1153–54 (9th Cir. 2007). Any state that participates in the Medicaid program and receives federal funding must comply with federal requirements. *Id.* at 1154. DHS is the Hawaii agency designated to administer Hawaii's Medicaid program, including ensuring compliance with federal requirements. Haw. Rev. Stat. § 346-14; *see* 42 U.S.C. § 1396a(a)(5). DHS provides Medicaid services to qualified individuals by contracting with private health providers; these services are known as "Quest Integration" health plans.

The early and periodic screening, diagnostic, and treatment services provision of the Medicaid Act requires designated state agencies, here DHS, to provide free screening and services to individuals who qualify for Medicaid. 42 U.S.C. § 1396d(a)(4)(B). To comply with this requirement, DHS screens Medicaid recipients for a list of illnesses and conditions. Following identification of a medical need as a result of screening, DHS has "an obligation to see that . . . services are provided" to ameliorate the demonstrated need. *Katie A.*, 481 F.3d at 1158. As the Medicaid Act requires, DHS provides medically necessary ABA to Medicaid beneficiaries with autism. 42 U.S.C. § 1396d(a)(4)(B), (r)(5)**.** The Medicaid Act does not allow DHS to "prohibit or restrict[] payment . . . for medical assistance for covered services furnished to a child with a disability because such services are included in the child's [IEP]." 42 U.S.C. § 1396b(c).

### 4.   The Americans with Disabilities Act & Section 504 of the Rehabilitation Act

The Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504")

establish "an affirmative obligation for public entities to make benefits, services, and programs accessible to people with disabilities." *Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017).[6]  The Rehabilitation Act's purpose is "to empower individuals with disabilities to maximize . . . inclusion and integration into society[] through . . . the guarantee of equal opportunity," 29 U.S.C. § 701(b)(1); the ADA "provide[s] a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."   42 U.S.C. § 12101(b)(1). Litigants often raise parallel claims under each statute where both are applicable, and our cases generally interpret the two statutes as providing the same protections.  *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1093–94, 1098 (9th Cir. 2013); *Paul G. ex rel. Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1098–99 (9th Cir. 2019); *Christopher S. ex rel. Rita S. v. Stanislaus Cnty. Office of Educ.*, 384 F.3d 1205, 1207–08 (9th Cir. 2004). Public schools are among the public entities covered by both the ADA and Section 504.  *See K.M.*, 725 F.3d at 1097–98.

## C.  Factual Background

In January and August of 2015, DHS issued memoranda stating that the Quest Integration health plans and other providers "must comply with the full range of [early and periodic screening, diagnostic, and treatment] duties and requirements, including providing Intensive Behavioral Therapy (IBT) treatment modalities, including ABA, for children under 21 years of age with [autism] when based on individualized determinations of medical necessity."   In another memorandum entitled "Coverage of Intensive

---

[6] Section 504 applies only to programs that receive federal funding.  29 U.S.C. § 794(a).

Behavioral Therapy (IBT) for Treatment of Children Under 21 Years of Age with Autism Spectrum Disorder (ASD)," issued two years later, DHS clarified that guidance. The new memorandum first reaffirmed that Quest Integration health plans must "comply with the full range of [early and periodic screening, diagnostic, and treatment] duties and requirements." The memorandum then stated:

> This guidance does not apply to the Department of Education (DOE) school-based claiming[7] or the Department of Health's Early Intervention Program (DOH-EIP). DOE may provide *ABA or ABA-like services* to a beneficiary while in school as it relates to a child's educational needs. If justification is provided indicating the ABA service is medically necessary and approved by the [Quest Integration] health plan, the health plan will be responsible to *provide and cover ABA services before or after school and when school is not in session*. . . .

> *The ultimate responsibility to ensure that medically necessary ABA services are delivered to beneficiaries rests with the [Quest Integration] health plans.* This responsibility is in effect all year, whether school is in session or out of session. [Quest

---

[7] "[S]chool based claiming" refers to the processes by which schools and educational agencies are reimbursed, such as by Medicaid, for health services they provide to students. *See, e.g.*, *What is the Purpose of School-Based Medicaid Claiming*, New England Medical Billing (Mar. 21, 2021), https://www.nembgroup.com/what-is-the-purpose-of-school-based-medicaid-claiming/.

> Integration] health plans are expected to coordinate with the family, DOE and/or [the Department of Health's Early Intervention Program] to ensure that the beneficiary receives medically necessary ABA services in the most efficient manner that also takes into account the child's tolerance to benefit from receiving services in and outside of school.

(Emphasis added).

As the 2017 memorandum indicates, DHS does not provide ABA services to students with autism during school hours, even if medically necessary and even if approved ABA services that would otherwise take place during school hours are covered by the child's health plan. Instead, DOE provides in-school ABA and ABA-like services to students with autism where there has been a determination that such services are educationally relevant, meaning that the services would "enable participation and progress [the] student[] in the general education curriculum." Although an IEP team may consider a child's prescription of ABA as medically necessary in making the determination whether ABA is to be included in their IEP, barring a finding that ABA services are educationally relevant, DOE will not provide them. Additionally, DOE does not allow private providers onto school campuses to provide ABA services, regardless of whether those providers are covered by Medicaid or private insurance. In short, DOE's policy is that only DOE may provide ABA (or ABA-like) services during school hours and only following a determination that such services are educationally relevant.

### D. District Court Proceedings

HDRC filed a complaint in the District of Hawaii on behalf of Hawaii children and young adults under the age of 22 diagnosed with autism and requiring some level of ABA. The Center sought declaratory and injunctive relief, alleging that: (1) DOE and DHS violated the ADA and Section 504 of the Rehabilitation Act; (2) DHS violated the Medicaid Act; and (3) DOE violated the IDEA.

DOE and DHS moved for summary judgment, asserting that "all counts of the Complaint filed in this action . . . can be redressed by the administrative procedures under [IDEA]." In the agencies' view, parents of HDRC's constituents were required "to exhaust administrative remedies before filing a civil lawsuit." The district court granted the motion on the grounds that HDRC's IDEA, ADA, Section 504, and Medicaid claims were all subject to IDEA's administrative exhaustion requirement. *See Haw. Disability Rts. Ctr. v. Kishimoto*, Civ. No. 18-00465, 2022 WL 3915472 (D. Haw. Aug. 31, 2022).

Citing a District of Massachusetts case, the district court first rejected HDRC's argument that it was exempt from the IDEA's administrative exhaustion requirement due to its status as a protection and advocacy organization. *Id.* at *6 (citing *S.S. ex rel. S.Y. v. City of Springfield*, 332 F. Supp. 3d 367, 378 (D. Mass. 2018)). The court next held that this case satisfies none of the exceptions to IDEA administrative exhaustion. *Id.* at *7–9. Finally, the district court concluded that the "gravamen" of HDRC's claims under the ADA, Section 504, and the Medicaid Act sought relief available under the IDEA and therefore likewise required exhaustion.

*Id.* at \*7.  The court granted summary judgment to DOE and DHS on each of HDRC's claims.**[8]**  *Id.* at \*12.

HDRC timely appealed.  HDRC asserted that (1) DOE's and DHS's policies, in combination, limit students to receiving during school only those ABA services deemed educationally relevant; (2) some students do not receive any ABA services in school, even though those services were prescribed as medically necessary; and (3) some students receive less robust ABA services in school than they need to improve their social functioning and meet their medical needs, as those in-school services are limited to services needed for the students to keep up with the educational curriculum.

## II.  DISCUSSION

We review the district court's grant of summary judgment *de novo*.  *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017).  We must determine, viewing the evidence in the light most favorable to the nonmoving party, here HDRC, "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law."  *Social Techs. LLC v. Apple Inc.*, 4 F.4th 811, 816 (9th Cir. 2021) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)).  There is a genuine issue of material

---

[8] The district court held that HDRC was precluded from bringing its IDEA, ADA, and Section 504 claims under § 1983, as the complaint had alleged.  *Haw. Disability Rts. Ctr.*, 2022 WL 3915472 at \*11–12**.**  Before the district court's order, HDRC recognized that § 1983 is not a proper vehicle to bring those claims, and so informed the district court in a letter brief.  In its brief on appeal, HDRC states that the references to § 1983 in its complaint were surplusage.  Because HDRC has abandoned any § 1983 claims, we do not address them.

fact when a reasonable jury reviewing the evidence submitted on summary judgment could return a verdict for the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Where evidence provided by the moving party conflicts with that provided by the nonmoving party, we must "assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id.* We review whether IDEA remedies must be exhausted, and if so, whether they have been exhausted, *de novo*. *See Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992).

## A. IDEA Claim

HDRC alleged in its operative complaint a claim under the IDEA against DOE, asserting that DOE violated the IDEA by: (1) "categorically failing to provide, or allow delivery of, ABA services to students with Autism through qualified professionals"; (2) "not providing adequate ABA services to its students with Autism"; (3) "prohibiting ABA service providers from campus to supply students with Autism with medically necessary ABA during school hours"; (4) "predetermin[ing] that ABA services are not to be included in IEPs"; (5) not providing FAPE to "students with Autism who need ABA during the school day"; and (6) failing to integrate students with Autism into "the regular classroom." None of these challenges was presented in a complaint submitted to DOE or pursued via an impartial due process hearing, administrative procedures which the IDEA requires parties to exhaust prior to filing a civil suit. *See* 20 U.S.C. § 1415(b)(6), (f)(1)(A), (i)(2)(A); *see also* Haw. Admin. Rules §§ 8-60-61, 8-60-65. HDRC argues that it is exempt from the IDEA's exhaustion requirement because of its status as a protection and advocacy organization, and that

if it is not exempt, one of three exhaustion exceptions applies.

### 1. Applicability of the IDEA's Exhaustion Requirement to HDRC

We first address whether, as Hawaii's protection and advocacy organization, HDRC is required to exhaust IDEA administrative remedies for its IDEA claims.

The IDEA provides for participation in administrative proceedings by "parents" and "local educational agenc[ies]," 20 U.S.C. § 1415(f)(1)(A), (i)(1)(A), and requires "administrative appeal procedures to be pursued before seeking judicial review," *Hoeft*, 967 F.2d at 1302 (citing 20 U.S.C. § 1415). Protection and advocacy organizations like HDRC do not fall under the statutory definition of either "parent" or "local educational agency." *See* 20 U.S.C. § 1401(19), (23). HDRC argues that, as protection and advocacy organizations are not included in the parties specifically authorized in the IDEA to file an administrative complaint under the IDEA, they are exempt from the IDEA's exhaustion requirement. We disagree.

Although the IDEA does not include protection and advocacy organizations in its list of parties to administrative actions, the IDEA is not the only statute relevant to the question of whether HDRC may participate in IDEA administrative hearings. The DD Act, which mandates the establishment of protection and advocacy organizations like HDRC, provides that protection and advocacy organizations "shall . . . have the authority to . . . pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the

rights of" individuals with developmental disabilities.[9]  42 U.S.C. § 15043(a)(2)(A)(i).  The DD Act thus empowers protection and advocacy systems like HDRC to seek administrative remedies on behalf of their constituents.  As relevant here, both the DD Act and the IDEA concern the provision of educational services to students with disabilities.  Such "related statutes should 'be construed as if they were one law.'"  *California v. Trump*, 963 F.3d 926, 947 n.15 (9th Cir. 2020) (quoting *Erlenbaugh v. United States*, 409 U.S. 239, 243 (1972)).  To give meaning to the DD Act's administrative remedies provision, HDRC must be able to make use of the IDEA's administrative procedures.

HDRC's statutory authority to represent its constituents in administrative hearings is consistent with our case law regarding the representative nature of protection and advocacy organizations.  In *Oregon Advocacy Center v. Mink*, 322 F.3d 1101 (9th Cir. 2003), we held that, given the "statutory mission and focus" of protection and advocacy organizations, such organizations are the "functional equivalent of . . . voluntary membership organization[s]" for purposes of associational standing, 322 F.3d at 1110–11, and

---

[9] The DD Act's predecessor, the Developmentally Disabled Assistance and Bill of Rights Act of 1975, similarly required that protection and advocacy organizations "have the authority to pursue legal, administrative, and other appropriate remedies to insure [sic] the protection of the rights of [developmentally disabled] persons who are receiving treatment, services, or habilitation within the State."  Pub. L. 94-103, § 203, 89 Stat. 486, 504.  The Developmentally Disabled Assistance and Bill of Rights Act passed the Senate in June 1975 and was enacted that October, predating the IDEA's predecessor, the Education for All Handicapped Children Act of 1975, which was passed and enacted in November 1975.  *See* Pub. L. 94-142, 89 Stat. 773.

so are empowered to represent in court the interests of the class of people they were created to protect, *see id.* at 1113.**[10]**

So too for purposes of administrative representation. As with the protection and advocacy organization at issue in *Mink*, HDRC is statutorily required to have a governing board "composed of members who broadly represent or are knowledgeable about the needs of the individuals served by the system." 42 U.S.C. § 15044(a)(1)(A); *see Mink*, 322 F.3d at 1111. A majority of the members of HDRC's governing board are required to be "individuals with disabilities, including individuals with developmental disabilities, who are eligible for services, or have received or are receiving services through the system; or . . . parents, family members, guardians, advocates, or authorized representatives of [such] individuals." 42 U.S.C. § 15044(a)(1)(B). HDRC thus serves a "specialized segment of [Hawaii's] community"—individuals with developmental disabilities—who are the "functional equivalent of members." *Mink*, 322 F.3d at 1110–11. Consistent with the holding of *Mink*, as well as with the DD Act's mandate that protection and advocacy organizations "shall have the authority to pursue legal, administrative, and other appropriate remedies" to protect the rights of their constituents, HDRC is authorized to bring administrative claims as representatives of the parents of developmentally disabled children. 42 U.S.C. § 15043(a)(2)(A)(i); *see Mink*, 322 F.3d at 1113. Administrative exhaustion by HDRC will

---

[10] *Mink* involved a protection and advocacy organization established pursuant to the Protection and Advocacy for Mentally Ill Individuals Act ("PAMII"), 42 U.S.C. §§ 10801–10851. 322 F.3d at 1105. Similar to the DD Act, PAMII provides for the creation of state organizations to "protect and advocate the rights" of individuals with mental illness. 42 U.S.C. § 10804(a)(1)(B).

serve the "general purposes of exhaustion and the congressional intent behind [IDEA's] administrative scheme," giving a court the "benefit of agency expertise and an administrative record" and providing DOE "adequate opportunity to investigate and correct [its] policies." *Hoeft*, 967 F.2d at 1303, 1308.

The district court, after observing that the IDEA does not include protection and advocacy organizations in the list of parties to administrative actions, concluded that "[a] Protection and Advocacy Program seeking relief that 'is closely related to questions about the provision of FAPE to their constituents' must *ensure* administrative remedies are exhausted under the IDEA." *Haw. Disability Rts. Ctr.*, 2022 WL 3915472 at *6 (emphasis added) (quoting *S.S. ex rel. S.Y. v. City of Springfield*, 332 F. Supp. 3d 367, 378 (D. Mass. 2018)). The district court specified that "[t]he parents of [HDRC's] constituents must exhaust the IDEA's administrative process." *Id.* at *10. Because we hold that HDRC may, and in fact must, pursue its IDEA claim via an IDEA administrative hearing, it is not necessary for HDRC to ensure that parents of its constituents independently exhaust the IDEA administrative process for their own claims.

We conclude that HDRC can pursue administrative remedies under the IDEA to fulfill its statutory obligation to protect the rights of individuals with developmental disabilities. *See* 42 U.S.C. § 15041. Because HDRC may seek relief for its IDEA claim in an IDEA administrative hearing, HDRC is bound by the IDEA's administrative exhaustion requirement for that claim, *see* 20 U.S.C. § 1415(i)(2)(A), so it must exhaust its own claim, but it need not ensure that parents of individual children with autism exhaust their individual IDEA claims before it brings suit.

### 2. Applicability of Exemptions to IDEA Exhaustion

Having determined that HDRC is subject to the IDEA's exhaustion requirement, we now address whether any of the exceptions to exhaustion under the IDEA apply to HDRC's IDEA claims. Our court has identified three independent exceptions to the IDEA's exhaustion requirement: (1) where the administrative process would be "futile," (2) where the claim arises from a policy or practice of "general applicability that is contrary to law," or (3) where it is "improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)." *Paul G. ex rel. Steve G. v. Monterey Peninsula Unified Sch. Dist.*, 933 F.3d 1096, 1101 (9th Cir. 2019) (quoting *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303–04 (9th Cir. 1992)). On the current summary judgment record, HDRC's IDEA claim is not exempt from administrative exhaustion under any of these exceptions.

### a. Futility

IDEA administrative exhaustion is futile when "[s]erious due process violations" preclude meaningful administrative review of a plaintiff's claims and "have the practical effect of denying the plaintiffs a forum for their grievances." *Hoeft*, 967 F.2d at 1304. Administrative exhaustion under the IDEA is also futile when "plaintiffs ha[ve] already taken all measures to secure administrative relief which could reasonably be expected of them." *Kerr Center Parents Ass'n v. Charles*, 897 F.2d 1463, 1470 (9th Cir. 1990).

The Center recognizes that several of its constituents have successfully pursued administrative remedies to obtain in-school ABA services. At the same time, HDRC as an

organization has not taken any "measures to secure administrative relief," let alone "all." *Kerr Center Parents*, 897 F.2d at 1470. Further, that its constituents have sometimes been able to acquire relief regarding ABA services in school—albeit after alleged "fierce advocacy" and "political pressure"—demonstrates that there exists a "forum for their grievances," *Hoeft*, 967 F.2d at 1304. The upshot is that there has been no adequate showing of futility for HDRC (or its constituents) with regard to pursuing administrative remedies.

### b. General Applicability

To establish a general applicability exception to the IDEA's exhaustion requirements, a plaintiff must challenge polices that "rise to a truly systemic level in the sense that the IDEA's basic goals are threatened on a system-wide basis" and "demonstrate in addition that the underlying purposes of exhaustion would not be furthered by enforcing the requirement." *Hoeft*, 967 F.2d at 1304–05. "A claim is systemic, and therefore entitled to the general applicability exception, if it concerns 'the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act.'"[11] *Paul G.*, 933 F.3d at 1101–02 (quoting *Doe ex rel. Brockhuis v. Ariz. Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir. 1997)).

HDRC's challenge under the IDEA to Hawaii's policies concerning ABA therapy in public schools does not meet these requisites. As the district court determined, HDRC

---

[11] *Paul G.*'s articulation of the general applicability exception overlaps with the standard for the inadequacy exception to IDEA exhaustion. *See infra* Part II.A.2.c. Whichever category these considerations belong under, they are not met here. *See id.*

challenged only "one component" of the special education program, as opposed to asserting that the policies of "the entire special education system" were flawed. HDRC's complaint focused on a particular component of DOE's special education programming—ABA provision and procedures. Although HDRC alleged several issues with DOE's practices and procedures concerning ABA therapy, its policy challenge does not raise the sort of wide-reaching and systemic concerns required to trigger the general applicability exception. *See Paul G.*, 933 F.3d at 1101–02. Because HDRC raised only a limited policy challenge, its IDEA claim is ineligible for the general applicability exception to the exhaustion requirement.

### c.  Inadequacy

Nor has HDRC shown that it is exempt from the IDEA's administrative exhaustion requirement because "the administrative process is [not] adequately equipped to address and resolve the issues presented." *Hoeft*, 967 F.2d at 1309. In large part, this exception overlaps with the general applicability exception, in recognition that "[a]dministrative remedies are generally inadequate where structural, systemic reforms are sought." *Id.* To the degree of that overlap, the inadequacy exception is inapplicable for the same reason—HDRC's IDEA claim "do[es] not rise to systemic proportions," so this exception is foreclosed. *Id.*

"Exhaustion may also be excused because of inadequacy of administrative remedies where the plaintiffs' substantive claims themselves concern the adequacy of the administrative process." *Id.* (citing *Jose P. v. Ambach*, 669 F.2d 865, 867–69 (2d Cir. 1982)). HDRC's IDEA claim focuses only on DOE's ABA process and related procedures; there is no contention that DOE has prevented access to the

administrative process or that the administrative process is unable to provide relief for HDRC's alleged IDEA violations.

HDRC argues that the IDEA's administrative process is inadequate to address its IDEA challenges to DOE's policies because administrative hearing officers are required to apply the state's current policies. But the IDEA requires that hearing officers' decisions be "based on a determination of whether the child received a free appropriate public education." 20 U.S.C. § 1415(f)(3)(E)(i). Under the federal statute, then, IDEA hearing officers are obligated to apply the statutory standard, not local or state policies. Nor does the record establish that hearing officers in Hawaii are bound by DOE policy such that they cannot give effect to the IDEA where the two conflict.[12]

We therefore conclude that HDRC's IDEA claim as alleged in the complaint is not exempt from administrative exhaustion under the IDEA. HDRC must satisfy the IDEA's administrative exhaustion requirement for its IDEA claim.

## B. Non-IDEA Claims

In addition to its IDEA claims, HDRC seeks to challenge Hawaii's policy regarding the provision of ABA services in schools under the ADA, Section 504, and Medicaid Act. In support of its ADA and Section 504 claims, HDRC alleged in its operative complaint that DOE and DHS: (1) "fail[] and refus[e] to make reasonable accommodations for [students with autism] to access programs and services simply because they relate to their Autism"; (2) "us[e] criteria and methods

---

[12] Should the administrative process later prove incapable of providing the relief HDRC seeks, HDRC's IDEA claim would be excused from exhaustion on futility or inadequacy grounds.

of administration that subject [students with autism] to discrimination on the basis of their disability"; (3) do not "afford[] [students with autism] an equal opportunity to participate in or benefit from services equal to that afforded others"; and (4) "limit[] [students with autism] to aids, benefits, or services that are not as effective in affording equal opportunity to participate in [DOE's and DHS's] benefits and services as those afforded others."

In support of its Medicaid Act claim against DHS, HDRC alleges that DHS: (1) "fail[s] to provide and ensure access to medically necessary ABA services during school hours"; (2) "improperly delegate[s] its responsibility to provide ABA services to [early and periodic screening, diagnostic, and treatment] recipients during the school day to DOE, despite knowing that DOE does not provide or accommodate ABA services for its students"; and (3) "fail[s] to coordinate a mechanism for ensuring the delivery of necessary services to students with Autism enrolled in DOE schools."

The only question before us with regard to the three non-IDEA claims is whether HDRC was required to exhaust the IDEA's administrative procedures before bringing its ADA, Section 504, and Medicaid Act claims.  The answer is no.

Section 1415(1) of the IDEA provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under . . . other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter,

> the procedures . . . shall be exhausted to the
> same extent as would be required had the
> action been brought under this subchapter.

20 U.S.C. § 1415(l).    Section 1415(l)'s exhaustion
requirement applies only if the relief sought under a non-
IDEA statute is also available under the IDEA.   In other
words, a plaintiff must exhaust IDEA administrative
remedies in the same way required had that plaintiff brought
an IDEA claim asserting a relief of FAPE *if* the relief sought
under a non-IDEA statute is also available under the IDEA.

The Supreme Court's recent decision in *Fry v. Napoleon
Community Schools*, 580 U.S. 154 (2017), governs whether
HDRC's non-IDEA claims seek relief that is available under
the IDEA.  Applying *Fry*, we conclude that HDRC was not
required to exhaust its non-IDEA claims.[13]

In *Fry*, as in this case, the school district asserted that the
plaintiff sought relief available under the IDEA and so was
required to exhaust administrative remedies before filing a
lawsuit.  580 U.S. at 164.  The Court in *Fry* began from the
premise that for non-IDEA claims to come within the
exhaustion requirement, "a suit must seek relief for the
denial of a FAPE, because that is the only relief the IDEA
makes available."  *Id.* at 165 (internal quotation marks
omitted).  *Fry* held that whether a suit seeks relief for the

---

[13] The Supreme Court more recently decided a related case, *Luna Perez
v. Sturgis Public Schools*, 598 U.S. 142 (2023).  *Perez* held that a plaintiff
is not required to exhaust IDEA's administrative remedies when they
seek only compensatory damages, "a form of relief everyone agrees
IDEA does not provide," even when suing for the denial of a FAPE.  598
U.S. at 148–50.  Because we hold that HDRC's non-IDEA claims do not
seek relief for the denial of a FAPE, we need not address under *Perez*
whether the form of relief HDRC seeks is available under the IDEA.

denial of a FAPE is determined by the "crux—or, in legal-speak, the gravamen—of the plaintiff's complaint." *Id.* at 169. The Court then provided guidance to courts in determining "whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination." *Id.* at 171.

*Fry* instructed that a court should ask: "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.* If the court answers "yes" to those questions, a complaint is likely not alleging a denial of FAPE. *Id. Fry* also instructed a court to look into the "history of the proceedings." *Id.* at 173. If a plaintiff previously used "the IDEA's formal procedures to handle the dispute" and switched to non-IDEA litigation "midstream," the move may signal to the court that "the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term." *Id.* at 173–74.

Informed by *Fry*, we hold that HDRC was not required to exhaust IDEA's administrative procedures for its non-IDEA claims.

### 1. ADA & Section 504 Claims (against DOE and DHS)

We assess HDRC's ADA and Section 504 claims together, as they rely on the same factual allegations and legal theories. Under *Fry*, these allegations and theories are not equivalent to claims for the denial of FAPE.

*Fry* concerned a child with cerebral palsy, E.F., who used a service dog, named Wonder, "as recommended by her pediatrician." *Fry*, 580 U.S. at 162. Her parents requested permission for Wonder to attend kindergarten with E.F. so that she could continue to benefit from his services. *Id.* School officials refused the request. *Id.* "Wonder should be barred from [the school]," administrators pronounced, "because all of E.F.'s physical and academic needs [were] being met through the services/programs/accommodations that the school had already agreed to." *Id.* (quotation marks omitted). The Frys' lawsuit alleged claims under Title II of the ADA and Section 504. *Id.* at 163–64.

Answering the hypothetical questions it presented, the Court in *Fry* determined that (1) the Frys could have filed the same complaint if a different public facility refused to admit Wonder, and (2) an adult could file a complaint if refused entry with a service dog. *Id.* at 175. Based on these answers, *Fry* concluded that the "suit would have nothing to do with the provision of educational services." *Id.*[14]

So here. Like E.F., HDRC brings claims under the ADA and Section 504 that do not concern the provision of educational services. These claims could have been filed if a different public facility—a public hospital, for example, or a library—refused to allow ABA therapists to provide services on-site to autistic children. Although ABA services are predominately provided to children, making it unlikely

---

[14] The record in *Fry* was not developed as to whether the Frys had previously sought relief through the IDEA administrative process. The Court in *Fry* held that on remand, the district court should determine to what extent the Frys "started down that road" and "whether [the Fry's] actions reveal that the gravamen of their complaint is indeed the denial of a FAPE, thus necessitating further exhaustion." *Id.* at 175–76.

that an adult at the school would file a complaint concerning whether their ABA support provider must be allowed entry to the school, one aspect of the answer to *Fry*'s "visitor" hypothetical indicates that HDRC's claims do not concern the denial of an adequate education. As the Fourth Circuit explained in a similar case, "a non-student visitor [to the school] (say, a friend, sibling, or other relative) could make a largely identical claim against [DOE and DHS] if it refused to permit an ABA therapist to accompany the visitor" into the school. *Z.W. ex rel. Warner v. Horry Cnty. Sch. Dist.*, 68 F.4th 915, 920 (4th Cir. 2023).

The "history of the proceedings" also demonstrates that HDRC's non-IDEA claims do not challenge the denial of a FAPE. *Fry*, 580 U.S. at 173. As discussed earlier, HDRC has not pursued IDEA administrative remedies. Although some of HDRC's constituents invoked IDEA's formal procedures, those constituents were proceeding on an individual basis to contest a particular student's eligibility for ABA services. They were not, as HDRC has done here, filing a complaint addressing DOE's and DHS's policies concerning ABA support during the school day.

Applying *Fry*, then, HDRC's claims do not allege a denial of FAPE, so IDEA exhaustion is not required here.

## 2. Medicaid Act Claim (against DHS only)

HDRC's Medicaid claim follows a similar pattern. HDRC seeks injunctive relief against DHS on its Medicaid Act claim. Specifically, it seeks to compel DHS to "provide adequate medically necessary ABA during school hours for Medicaid recipients." "Requiring the State actually to provide [early and periodic screening, diagnostic, and treatment] services that have been found to be medically necessary is consistent with the language of the Medicaid

Act . . . ." *Katie A.*, 481 F.3d at 1162.  For the same reasons we have discussed with regard to the ADA and Section 504 claims, this claim does not seek relief from the denial of a FAPE.  So, under *Fry* HDRC can pursue its Medicaid Act claim without first exhausting IDEA administrative procedures.

The district court held otherwise but its analysis was incorrect.  The district court concluded that because "it is DOE's responsibility to provide educationally necessary ABA services during school hours[,] Plaintiff's Medicaid claim is in effect an IDEA claim and must be exhausted." *Haw. Disability Rts. Ctr.*, 2022 WL 3915472 at *11 (internal citation omitted).  This conclusion does not address HDRC's contention that DHS violates the Medicaid Act's early and periodic screening, diagnostic, and treatment mandate *by* delegating ABA services to DOE during school hours.  The State of Hawaii is statutorily required under the Medicaid Act to provide early and periodic screening, diagnostic, and treatment services that have been found to be medically necessary, regardless of their educational relevance.  *See Katie A.*, 481 F.3d at 1162 (citing 42 U.S.C. § 1396a(a)(43)).  HDRC's Medicaid Act claim does not seek relief from the denial of a FAPE but instead challenges the policy of DHS, an agency with no obligations under the IDEA, as violative of this Medicaid Act mandate.  The district court's analysis also did not consider that students who are prescribed medically necessary ABA services by DHS but for whom DOE does not deem ABA to be educationally relevant cannot receive this medical accommodation during school hours, thereby "depriv[ing] Medicaid recipients with Autism of their [early and periodic screening, diagnostic and treatment] rights" should their ABA medical needs extend to at-school supports.  As with HDRC's ADA and Section 504

claims, its Medicaid Act claim does not allege a denial of FAPE but a failure to provide for medically necessary ABA services during school hours.

HDRC was not required to exhaust its Medicaid Act claim under the IDEA's procedures.

## CONCLUSION

HDRC could and was required to exhaust its IDEA claim via the IDEA's administrative procedures; none of the exceptions to IDEA exhaustion apply. But HDRC's non-IDEA claims do not allege a denial of a FAPE and so do not require exhaustion under the IDEA. For the foregoing reasons, the district court decision is **AFFIRMED in part, REVERSED in part, and REMANDED**.